## MADELEY et al. v. TRUSTEES OF CONROE INDEPENDENT SCHOOL DIST. et al.

### No. 3578.

Court of Civil Appeals of Texas. Beaumont.

June 27, 1939.

Rehearing Denied June 28, 1939.

C. L. Madeley and W. N. Foster, both of Conroe, and Edd R. Campbell, of Houston, for appellants.

R. A. Powell, W. P. McComb, and O. Etheridge, all of Conroe, and Vinson, Elkins, Weems & Francis, W. P. Hamblen, and Gavin Ulmer, all of Houston, for appellees.

WALKER, Chief Justice.

Conroe Independent School District, as it exists now, was created and organized by a special act of the 39th Legislature, approved the 17th day of March, 1925 (23 Gammel's Laws of Texas, p. 487), embracing the old Conroe Independent School District, common school districts Nos. 12, 14, 28, and parts of common school districts Nos. 11, 13 and 20. The trustees of the Conroe Independent School District will be referred to as Trustees, and the district as the District.

By an election ordered on the 25th day of March, 1925, and held and returns made on the 25th day of April, 1925, and the result declared on the 29th day of May, 1925, the new district assumed all the bonds outstanding against its component parts, subjected all the property within the district to all school taxes theretofore levied and assessed by the old Conroe Independent School District, and authorized the levy of an ad valorem tax "for the maintenance of public free schools in said district" at a rate not to exceed $1 on the $100. valuation of the taxable property in the new district. By orders duly made and entered, for the years 1934–38, inclusive, the Trustees levied and collected an ad valorem tax on all the property within the district for "the support and maintenance" of its public free schools, at the following rates:

| Year | Rate |
|---|---|
| 1934 | .38 |
| 1935 | .67 |
| 1936 | .70 |
| 1937 | .53 |
| 1938 | .95" |

All money received and held by the Trustees for public free school purposes was divided into—earmarked—the following funds, as shown by their books and their bank account: "state available fund," "county available fund," "vocational aid," "local maintenance fund," "interest and sinking fund," "delinquent taxes," "sale of property and insurance adjustments," and "other sources." From the funds thus received and collected, the Trustees supported and maintained the public free schools of the district, and from this fund also made the following building improvements:

| | | |
|---|---|---|
| 1935 to 1939 athletic stadium, field, truck, etc. | $ 15,000.00 |
| 1936 North and South wings to Crockett High School Building | 210,000.00 |
| 1936 to 1937 Sam Houston Elementary School Building | 250,000.00 |
| 1937 Home Economics Building | 25,000.00 |
| 1937 Gymnasium building, connected with Athletic building | 12,000.00 |
| 1938 School bus garage building | 10,000.00 |
| Total | $522,000.00 |

After all these expenditures had been made and charged against the maintenance fund collected under the orders given above, on April 11, 1939, the Trustees had on hand, in cash, as a surplus in the maintenance fund, $332,876.26.

The school budget prepared for the year 1939–40 calls for the expenditure in the maintenance of the schools of the sum of $275,000; of that sum it was estimated that $140,965.97 would be expended from the maintenance fund. The tax receipts for 1938–39, as shown above, on the rate of $.95 amounted to the sum of $393,861.68.

The Trustees adjusted the valuation of the taxable property within the District for

1938–39 at the sum of $37,500,000; the Conroe oil field had been discovered and developed, thus giving to the District this great value for the purposes of taxation. In 1933, the outstanding bonds against the District amounted to about $144,000; which had been reduced to about $12,000. Since 1933, no bonds have been issued or voted for any purpose; all the improvements listed above were paid for out of the maintenance fund.

On or about the 9th day of March, 1939, after giving due public notice, the Trustees executed the following building contracts, all expenditures to be made from the surplus of $332,876.26 in their hands·on the 11th day of April, 1939:

T. B. Hubbard Construction
  Company ................. $183,045.00
Barber Plumbing Company....  27,650.00
Herbert Sisco (Electrician)...  10,137.00
Lamar Q. Cato (Architect)....  11,041.60

At the time of the execution of these contracts the Trustees had no funds, except the surplus in the maintenance fund, to pay the cost of the improvements.

This suit was filed on the 5th day of May, 1939, in the district court of Montgomery County, by appellants, D. A. Madeley and others, tax paying citizens residing within the Conroe Independent School District, against appellees, the Trustees and certain other parties, alleging the levy, assessment· and collection of the local tax, its expenditure in the maintenance of the schools and for building improvements, all as given above, and that the expenditures for the building improvements constituted an unlawful diversion of. the maintenance fund; the execution of the contract of March 9, 1939, and that it was to be paid for by the Trustees from the surplus in the maintenance fund now in their hands, and that such expenditure would constitute an unlawful diversion of the maintenance fund; that the money now held by the Trustees, as a surplus in the maintenance fund, is sufficient to maintain the schools for 1939–40 without any additional levy for that purpose. The prayer was for a temporary injunction, to be made permanent on hearing, enjoining the Trustees from paying out any money from the surplus fund in discharge of the contract of March 9, 1939, and from levying and collecting an ad valorem tax for the year 1939–40.

On the day the suit was filed, on presentation of the petition to the district judge in chambers, a restraining order was granted as prayed for by appellants and a hearing on the prayer for the temporary injunction was set for the 9th day of May. The issues made by appellants' petition and appellees' answer were submitted to the court on the pleadings and a full development of the facts; the temporary restraining order was dissolved and the prayer for temporary injunction denied. From that order appellants have duly prosecuted their appeal to this court.

At the time the suit was filed and before the issuance of the restraining order, the construction of the improvements embraced within the contract of the 9th day of March had been started; the Hubbard Construction Company, on its contract, had been paid the sum of $12,500 and Mr. Cato the sum of $6,000, all out of the surplus in the maintenance fund in the hands of the Trustees on the 11th day of April, 1939.

Opinion.

■■■■ By the election held on the 5th day of May, 1925, the Trustees were authorized to levy and collect an ad valorem tax "for the maintenance of public free schools in said district" at a rate not to exceed $1 on the $100 valuation of taxable property in the district. Under that tax, during the years immediately prior to the school year of 1939-40, the Trustees levied the ad valorem tax authorized by the election, from which they, on April 11, 1939, had on hand in cash a surplus of $332,876.26, which, without the collection of any additional tax, was sufficient to maintain the public free schools of the District for the school year 1939-40. On this statement, are appellants, tax paying citizens of the district, entitled to an injunction restraining the Trustees from levying and collecting an ad valorem tax for the maintenance of the public free schools of the District for the school year 1939-40? The question must be answered in the negative. By the election of the 5th of May, 1925, the Trustees were vested with the power to levy and collect an ad valorem tax "for the maintenance of public free schools" in the District, and were vested with the discretion to fix the tax rate at a rate not to exceed $1 on the $100 valuation of the property in the District. In the absence of fraud in fact, the courts cannot limit the trustees of an independent school district in the exercise of the power vested in them to levy the tax. That power

was given them by the sovereign voters under the mandate of the law, and its exercise cannot be restrained. In point in principle, State v. Mallet Land & Cattle Co. 126 Tex. 392, 88 S.W.2d 471; Menardville Independent School District v. Moser, Tex.Civ.App., 90 S.W.2d 578. But, conceding to the Trustees the power, absolute and beyond the control of the courts, to levy and collect annually an ad valorem tax for the maintenance of the public free schools of the District, can their discretion as to the tax rate vested in them by the election of the 5th day of May, 1925, be controlled by the courts? We think this question is answered against appellants by Eagle Lake Independent School District v. Hoyo, Tex. Civ.App., 199 S.W. 352. In the absence of fraud in fact, the courts will not interfere with the discretion vested in the trustees of an independent school district, as the result of a tax election, in levying and assessing the tax, and in fixing the tax rate.

The second point presented by the appeal is: Can the Trustees be enjoined from expending the surplus in the maintenance fund, now in their hands, in the erection of the improvements covered by the contract of March 9, 1939? We shall not discuss this point on the theory of equity, that, knowing of the proposed expenditures, appellants stood by and permitted the contract to be executed, and $18,000 to be expended in its execution; nor on the theory òf want of power in appellants to bring this suit—having paid their tax for the maintenance of the schools and having received the benefits contemplated by the collection of the tax, do they have a justiciable interest in the surplus fund, in their capacity as property tax paying voters? But we shall answer the question on the theory of the right and power of the Trustees to pay for the improvements covered by the contract out of the surplus in the maintenance fund in their hands on the 11th day of April, 1939.

█ It is provided by Sec. 3, of Art. 7, of the State Constitution, that: " * * * the Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts heretofore formed or hereafter formed, for the further maintenance of public free schools, and for the erection and equipment of school buildings therein."

Thus, there is an express constitutional mandate to the trustees of an independ-

ent school district to levy and collect an ad valorem tax, (a) for the maintenance of the public free schools of the district, and (b) for the erection and equipment of school buildings in the district.

█ The two following Articles, R.C. S.1925, were passed by the Legislature to effectuate Sec. 3 of Art. 7 of the Constitution Vernon's Ann.St.:

"Art. 2784. *Taxing power.—*

"The commissioners court for the common school districts in its county, and the district school trustees for the independent school districts incorporated for school purposes only, shall have power to levy and cause to be collected the annual taxes and to issue the bonds herein authorized, subject to the following provisions:

"1. In common school districts, for the further maintenance of public free schools and the erection and equipment of school buildings therein, a special tax; and in independent districts for the maintenance of schools therein, an ad valorem tax, not to exceed one dollar on the one hundred dollars valuation of taxable property of the district.

"2. In common school and independent districts, for the purchase, construction, repair or equipment of public free school buildings within the limits of such districts and the purchase of the necessary sites therefor, a tax not to exceed fifty cents on the one hundred dollars valuation, such tax to be for the payment of the current interest on and provide a sinking fund sufficient to pay the principal of bonds which said districts are empowered to issue for such purposes.

"3. The amount of maintenance tax, together with the amount of bond tax of any district, shall never exceed one dollar on the one hundred dollars valuation of taxable property; and if the rate of bond tax, together with the rate of maintenance tax voted in the district, shall at any time exceed one dollar on the one hundred dollars valuation, such bond tax shall operate to reduce the maintenance tax to the difference between the rate of the bond tax and one dollar.

"4. No tax shall be levied, collected, abrogated, diminished or increased, and no bonds shall be issued hereunder, until such action has been authorized by a majority of the votes cast at an election held in the district for such purpose, at which none but

property tax paying qualified voters of such district shall be entitled to vote.

\*　　\*　　\*　　\*　　\*　　\*　　\*

"Art. 2827. *Authorized expenditures.*—

"The public free school funds shall not be expended except for the following purposes:

"1. The State and county available funds shall be used exclusively for the payment of teachers' and superintendents' salaries, fees for taking the scholastic census, and interest on money borrowed on short time to pay salaries of teachers and superintendents, when these salaries become due before the school funds for the current year become available; provided that no loans for the purpose of payment of teachers shall be paid out of funds other than those for the then current year.

"2. Local school funds from district taxes, tuition fees of pupils not entitled to free tuition and other local sources may be used for the purposes enumerated for State and county funds and for purchasing appliances and supplies, for the payment of insurance premiums, janitors and other employes, for buying school sites, buying, building and repairing and renting school houses, and for other purposes necessary in the conduct of the public schools to be determined by the Board of Trustees, the accounts and vouchers for county districts to be approved by the county superintendent; provided, that when the State available school fund in any city or district is sufficient to maintain the schools thereof in any year for at least eight months, and leave a surplus, such surplus may be expended for the purposes mentioned herein."

Since these two articles of the statutes constitute parts of the law set up for the control of our system of public free schools, and relate to the same general subject—the taxing power of the district and the expenditure of the tax funds—they are in pari materia and must be, construed together. Love v. City of Dallas, 120 Tex. 351, 40 S. W.2d 20, 39 Tex.Jur. 253. The trustees of an independent school district by these two articles are given the power (a) to levy and collect a local tax for the maintenance of the district public free schools, and (b) to levy and collect a tax "for the purchase, construction, repair or equipment of public free school buildings within the limits of such district." Article 2784, subd. 2. By Sec. 2 of Art. 2827, it is provided that the local tax funds may be expended for the payment of teachers' salaries, etc.—the purposes enumerated in Sec. 1—and for the following additional purposes: " \* \* \* for purchasing appliances and supplies, for the payment of insurance premiums, janitors and other employes, for buying school sites, buying, building and repairing and renting school houses, and for other purposes necessary in the conduct of the public schools to be determined by the Board of Trustees."

Construing Articles 2784 and 2827, in pari materia, the local tax levied and collected by the trustees of an independent school district for the maintenance of the schools can be used only for the purposes of maintenance, to the extent needed for that purpose, and the tax collected under Sec. 2 of Art. 2784 can be used only to retire bonds voted for the erection of a school building, etc., to the extent that it is needed for that purpose. We think this conclusion on application of the rule of in pari materia has support in the holding in Love v. Rockwall Independent School District, Tex.Civ.App., 194 S.W. 659, that the term "maintenance" of schools does not include the cost of the construction of school houses.

■ The surplus fund in the hands of the Trustees on April 11, 1939, was not only levied and collected by the Trustees for the maintenance of the public free schools, but it was also allocated by them—earmarked—for that purpose; also by the very order under which the fund was levied and collected, it was expressly earmarked for the support and maintenance of the public free schools, "and for no other purpose." Investing the trustees with power to levy and collect a local tax for the maintenance of the public free schools within their district, the law denies them the power to divert the fund to any other purpose, in so far as the fund is needed for the support and maintenance of the public free schools. First Nat. Bank v. Murchison Independent School District, Tex.Civ.App., 114 S.W.2d 382; San Benito School District v. Farmers' State Bank, Tex.Civ.App., 78 S.W.2d 741.

■ In the case at bar, appellants do not charge the trustees, in fact, with diverting the maintenance fund from the purpose for which it was collected; true, they so charge in their petition as a legal conclusion, but the law, on the facts charged, does not support their legal conclusion of diversion. Under the allegation of the peti-

tion and the facts, the District public free schools, for the years 1933-39, were adequately maintained and supported, and no part of the surplus now in the hands of the Trustees was needed for that purpose, nor will it be needed for that purpose in the future.

Under our conclusions, stated above, appellants cannot enjoin the levy and collection of the tax for the year 1939-40, nor can they control, by injunction, the amount of the tax rate. We have, thus, before us a state of facts where, in so far as the maintenance of the schools is concerned, every intendment of Articles 2784 and 2827 has been fully complied with. The surplus in the hands of the Trustees on April 11th, 1939, under the allegations of appellants' petition and the proof offered by them, will be augmented by the tax collected for the year 1939-40. What shall the Trustees do with this surplus? It cannot be expended in the support and maintenance of the public free schools, for it is not needed for that purpose; it cannot be diverted from public free school purposes, for under the Constitution it was collected for that purpose. It cannot be returned to the tax payers.

Its allocation to the maintenance fund was by legislative edict for the purpose of supporting and maintaining the public free school. When that purpose has been effectuated, the fund is no longer subject to the control of the statutes, for the purpose of the statutes has been fully effectuated. If and when the statutes cease to control the fund, then it becomes a constitutional fund and not a statutory fund, and may be used by the trustees for the constitutional purposes; one of the constitutional purposes is "the erection and equipment of school buildings" within the district. What we have said is in full recognition of the legal proposition that the fund collected for the support and maintenance of the public free schools, to the extent that it is needed for that purpose, can not be diverted to any other purpose.

The following illustration is in point on our holding: Where a district has issued bonds and voted a tax to retire them, what becomes of the surplus of the tax when the bonds are retired? Since it is not reasonable that the exact amount of the bonds will be collected, on every bond issue the trustees will have in their hands a surplus. Again, a tax payer permits his tax to become delinquent until after the bonds are retired; when sued, can he defend on the ground that the bonds for which the tax

against his property was levied have been paid off? When the delinquent tax is collected, how shall it be expended? These questions find their answer in Sec. 3 of Art. 7 of the Constitution; where the bonds have been paid off the statutes regulating the expenditure of the funds for their payment cease to control the power of the trustees in the expenditure of the surplus, and its expenditure rests in the discretion of the trustees, under Sec. 3 of Art. 7 of the Constitution.

The Trustees, for years, have used the surplus in the maintenance fund to erect public school buildings. At the time this suit was filed, Conroe Independent School District was badly in need of the very improvements covered by the contract of March 9, 1939. If these improvements are not erected, about 400 school children will be compelled to attend school under the most adverse circumstances. True, as suggested by appellants, the Trustees can order a bond election for the purpose of erecting these improvements. But, as we understand the law, with this surplus in their hands they are not compelled to order a bond election, but have the power to meet the needs of the district from the surplus now held by them. The discovery of oil within the boundaries of the Conroe Independent School District has put into the hands of the trustees a maintenance fund sufficient to meet the needs of the District without burdening it with improvement bonds. The question is one resting within the discretion of the Trustees, and beyond the control of the courts.

If we are correct in our conclusion, the authorities cited by both parties, in construing Articles 2784 and 2827, are not in point on the issues presented by this appeal. We have been cited to no authority, directly in point, controlling the discretion of the trustees of an independent school district in the expenditure of a surplus in the maintenance fund, not needed for the support and maintenance of the district public free schools. By classifying this surplus as a constitutional fund, the power of the trustees to direct its expenditure for public free school purposes is clear.

It follows that the judgment of the lower court, denying and refusing appellants' prayer for injunctive relief, should be affirmed, and it is accordingly so ordered.

Affirmed.

COMBS, J., not sitting.