

**THE ATTORNEY GENERAL**
**OF TEXAS**

AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

July 2, 1974

The Honorable J. W. Edgar, Commissioner
Texas Education Agency
201 East Eleventh Street
Austin, Texas 78701

The Honorable Bevington Reed.
Commissioner, Coordinating Board
Texas College and University System
P. O. Box 12788, Capitol Station
Austin, Texas 78711

Opinion No. H-339

Re: Application to
Independent School Districts
and Regional Junior Colleges
of statute authorizing issuance
of Certificate of Indebtedness

Gentlemen:

Each of you has requested our opinion about the effect of Article
2784g-2, V. T. C. S., currently Sec. 20. 51 of the Texas Education Code,
dealing with "Certificates of Indebtedness" issued by school districts.

Dr. Edgar asks:

> In authorizing a school district board to issue
> certificates of indebtedness (in amount(s) not to
> exceed $250,000) without the requirement of a local
> election to approve such indebtedness, does [Sec.
> 20. 51] contravene Article VII, Section 3 of the
> Constitution of Texas.

His second question, relating to a specific school district is:

> Since [Sec. 20. 51] was not enacted prior to the
> time when the district electorate voted an authorized
> maximum maintenance tax rate (in July 1968), may a
> school district board legally appropriate and/or

irrevocably pledge local maintenance taxes as
payment for certificates of indebtedness issued
pursuant to [Sec. 20. 51] as amended?

Dr. Reed inquires for the Wilbarger County Junior College District
about the legality of the issuance of such certificates by the District for the
purpose of constructing physical education facilities on the campus of Vernon
Regional Junior College which the District operates.

Pertinent provisions of § 20. 51 of the Education Code, incorporating
the 1973 amendment to Article 2784g-2 §1 (a), are:

> (a) Any school district, including a junior college
> district, may issue interest bearing Certificates of
> Indebtedness for the purpose of (1) providing funds for
> the erection and equipment of school buildings within
> the boundaries of the district, (2) refinancing outstanding
> certificates as herein provided, or (3) purchasing sites
> for the future construction of public school facilities.
> The term certificates, as used in this Act [Section] shall
> include all obligations authorized to be issued hereunder
> and the term shall include interest thereon, unless
> clearly indicated by the context that another meaning is
> intended.

> (b) The governing body of the district shall make
> provision for the payment of the certificates issued
> . . . by . . . the appropriation and pledge of local
> school funds derived and to be derived from main-
> tenance taxes levied and assessed or to be levied
> and assessed under authority of Sections 20.02 and
> 130.122 of this code . . . or other similar law . . .
> which limits the amount of tax which may be levied
> for maintenance purposes, as distinguished from
> bond requirements. The appropriation and pledge
> may be in the nature of a continuing irrevocable

pledge to apply the first moneys collected or to
be collected annually from the tax levy to the pay-
ment of the obligations or by the irrevocable
present levy and appropriation of the amount of the
maintenance tax as is required to meet the annual debt
service requirements of the obligations, in which
event the governing body shall covenant to annually
set aside the amount in the annual tax levy, showing
the same is a portion of the maintenance tax.  The
governing body shall annually budget the amount
required to pay the debt service requirements, prin-
cipal and interest, of the obligations which may be
scheduled to become due in any fiscal year. Nothing
herein shall be construed as permitting the levy of
a maintenance tax in excess of the amount approved
by the resident qualified property taxpaying voters
of the district.

(f) Certificates authorized to be issued hereunder
shall be payable at such times, be in such form and
denomination or denominations . . . and contain such
other provisions as the governing body of the district
may determine, but in no event shall any certificate
mature over a period in excess of 25 years from the
date thereof, or bear interest at a rate in excess of
seven percent per annum.

(k) Certificates issued under the provisions of this
section shall be an indebtedness of the school district
issuing them, but the holder thereof shall not have the
right to demand payment thereof out of any fund or
funds other than those pledged to its payment. . . .

* * * * *

p. 1581

(n) The provisions of this section shall be cumulative of existing laws relating to the financing of the cost of erecting and equipping school buildings by school districts, it being the legislative intent that this section shall be complete authority for the issuance, sale, and delivery of certificates by school districts.

* * * * *

These provisions have not yet been construed by the appellate courts, but we believe they will be held constitutional.

Article 7, Sec. 3, of the Constitution of Texas reads in part as follows:

. . . and the Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts heretofore formed or hereafter formed, for the further maintenance of public free schools, and for the erection and equipment of school buildings therein; provided that a majority of the qualified property taxpaying voters of the district voting at an election to be held for that purpose, shall vote such tax not to exceed in any one year one ($1.00) dollar on the one hundred dollars valuation of the property subject to taxation in such district, but the limitation upon the amount of school district tax herein authorized shall not apply to incorporated cities or towns constituting separate and independent school districts, nor to independent or common school districts created by general or special law. (Emphasis added)

Although the portion of Article 7, Sec. 3, here considered appears to refer to a single tax to be voted for maintenance and school building purposes, the Legislature, historically, has treated taxes for such respective purposes

p. 1582

as separate, distinct taxes, each requiring separate voter approval.
(See, Secs. 20.02, 20.04, 130.122, V. T. C. S., Education Code).

In Madeley v. Trustees of Conroe I. S. D., 130 S. W. 2d 929 (Tex.
Civ. App., Beaumont, 1939, err. dis'm., judgment cor.), the Court
considered two statutory forerunners of the above noted Education Code
provisions. All the public free schools in the district were adequately
maintained and a large surplus had accumulated in the maintenance tax
fund which the Trustees proposed to spend for building improvements.

> What shall the Trustees do with this surplus? It
> cannot be expended in the support and maintenance
> of the public free schools, for it is not needed for that
> purpose; it cannot be diverted from public free school
> purposes, for under the Constitution it was collected
> for that purpose. It cannot be returned to the tax
> payers.
>
> Its allocation to the maintenance fund was by
> legislative edict for the purpose of supporting and
> maintaining the public free school. When that
> purpose has been effectuated, the fund is no longer
> subject to the control of the statutes, for the purpose
> of the statutes has been fully effectuated. If and
> when the statutes cease to control the fund, then
> it becomes a constitutional fund and not a statutory
> fund, and may be used by the trustees for the con-
> stitutional purposes; one of the constitutional purposes
> is 'the erection and equipment of school buildings'
> within the district. (Emphasis added)

In Allen v. Channelview Ind. Sch. Dist., 347 S. W. 2d 27 (Tex. Civ. App.,
Waco, 1961, writ ref'd.) the plaintiff attacked the constitutionality of
Article 2786e, V. T. C. S., now Sec. 20.43(a) of the Education Code,
which authorized school districts to issue time warrants against main-
tenance tax proceeds for certain purposes, including the repair, pur-
chase, renovation and equipment of school properties. The statute, in
effect, pledged "delinquent taxes (except bond taxes) penalties and
interest to the payment of outstanding warrants." But the Court denied
that Article 7, Sec. 3 of the Constitution forbade deficit financing.

The plaintiff argued that the previous maintenance tax elections had authorized levy and collection of taxes for maintenance only for a current year, and that no new elections had been held to authorize the collection of taxes to pay such time warrants. But the Court noted that only "available" maintenance tax money, collected pursuant to an election, properly held, was used. [Presumably, surplus tax money similar to the kind discussed in the Madeley case; note Sec. 3 of Acts 1953, 53rd Leg., R.S., p.1038, ch.427, and see Attorney General Opinion C-197 (1963)].

In discussing this claim, the Court said:

> They contend the statute unconstitutionally authorizes issuance of warrants payable from taxes without an election at which the tax is voted. If by this is meant a special election at the time the warrants are issued, Section 3 does not require it, and there is no contention maintenance taxes 'available' were not properly voted. (Emphasis added)

The Madeley case would seem to teach that where the statute authorizes the collection of the tax for current year maintenance purposes only, the money cannot be used for anything else until all maintenance requirements for the year have been met. The Allen case teaches that maintenance tax funds "available" can be pledged to pay time warrants, if the practice is legislatively sanctioned.

In our view, surplus maintenance tax receipts, remaining unexpended after maintenance purposes have been fulfilled, may be pledged as payment for Certificates of Indebtedness under the above-quoted portions of Sec.20.51, whether the election authorizing the levy of the maintenance tax funds used for its accomplishment occurred before or after the effective date of Sec. 20.51.

## SUMMARY

Surplus maintenance tax receipts, remaining
unexpended after maintenance purposes have been
fulfilled, may be pledged as payment for Certificates

of Indebtedness under the above-quoted portions of Sec. 20.51, whether the election authorizing the levy of the maintenance tax funds used for its accomplishment occurred before or after the effective date of Sec. 20.51.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee