

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

August 8, 1986

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Richard Handorf
Criminal District Attorney
Anderson County Courthouse
Palestine, Texas   75801

Opinion No.    JM-530

Re:   Whether  Anderson  County  may
expend surplus money from road bonds
and from its .workmen's compensation
account to build a jail

Dear Mr. Handorf:

You ask whether Anderson County may spend certain county funds for the construction of a new jail. Your first question is whether Anderson County may spend $1.4 million in surplus from an issuance of road bonds. You explain that in 1969 the voters of Anderson County voted to issue $750,000 in road bonds pursuant to article 752a, V.T.C.S., repealed by Acts 1983, 68th Leg., ch. 288, at 1526. At the time of that bond election article 752a provided:[1]

---

1. The original version of article 752a was adopted in 1926. Acts 1926, 39th Leg., ch. 16, at 23. In 1955 the legislature adopted two separate amended versions of article 752a. Acts 1955, 54th Leg., ch. 113, at 393, and Acts 1955, 54th Leg., ch. 69 at 348. Both versions appeared in Vernon's Texas Civil Statutes. The version of article 752a set out in the text of this opinion is the version that appeared in chapter 113. The first paragraph of the other version was essentially the same except that it did not contain the words "or for any other lawful permanent improvement."

Both versions passed the Senate on the same day. After that, the chapter 113 version, which is the version set out in the text of this opinion, passed the House later than the other version. Therefore, to the extent that the versions are inconsistent, the chapter 113 version controls. See Wright v. Broeter, 196 S.W.2d 82, 85 (Tex. 1946) (later-enacted statute controls).

> Any county, or any political subdivision of a county, or any road district that has been or may hereafter be created by any General or Special Law, is hereby authorized to issue bonds for the purpose of the construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof, in any amount not to exceed one-fourth of the assessed valuation of the real property of such county or political subdivision or road district, and to levy and collect ad valorem taxes to pay the interest on such bonds and provide a sinking fund for the redemption thereof. Such bonds shall be issued in the manner hereinafter provided, and as contemplated and authorized by Section 52, of Article 3, of the Constitution of this State. The term 'Political Subdivision,' as used in this Act, shall be construed to mean any commissioners precinct or any justice precinct of a county, now or hereafter to be created and established. Provided, when the principal and all interest on said bonds are fully paid, in the event there is any surplus remaining in the sinking fund, said remaining surplus not used in the full payment of the principal and interest on said bond or bonds may be used by the county, political subdivision of the county, or any local district that has been or may hereafter be created by any General or Special Law for the purpose of the construction, maintenance, and operation of macadamized, graveled or paved roads and turnpikes or in the aid thereof or for any other lawful permanent improvement as may be determined by the Commissioners Court of any county or the officials of any political subdivision of a county or any said road district. (Emphasis added).

Acts 1955, 39th Leg., ch. 113, §1, at 393.

The election order for the 1969 bond election stated that the voters would be voting on the following proposition:

> WHETHER or not the bonds of said Anderson County, Texas, shall be issued in the amount of SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750,000), to bear interest at a rate not to exceed the maximum prescribed by law at the time of issuance, and to mature serially over a period of not to

> exceed TWELVE (12) years from the date thereof, in conformity with the Constitution and laws of the State of Texas, particularly Section 52 of Article III of the Constitution, as amended, <u>for the purpose of the construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes or in aid thereof</u>, in Anderson County, Texas; and shall ad valorem taxes be levied on all taxable property in said County subject to taxation for the purpose of paying the interest on said bonds and to provide a sinking fund for the redemption thereof at maturity. (Emphasis added).

You also sent us a copy of a "Proposed Election Hand-out." That handout states:

> Proceeds of the bond issue will be used to finance the County's participation in Right-Of-Way and fencing of 98 miles of U.S. and State highways. The State of Texas shares equally with the county in the purchase of R-O-W and fencing of the same. This 98 miles of R-O-W and fencing involves 20 projects along State Highways #155, #294 and #19 and U.S. Highways #79, #84, #287 and Loop #256.

You inform us that the projects described in that handout were not all completed. You do not inform us who issued the handout, when it was issued, or how it was distributed.

You also provide the following information:

> The $750,000.00 voted in the Bond Election was eventually spent on right of way costs but . . . due to the increased amount of state participation the money was not used for a considerable length of time and it accumulated a tremendous amount of interest. The interest and principal of the Bond Election have been totally paid off.

You ask whether Anderson County may spend the surplus money on the construction of a new jail. We conclude that it may not. Standing alone, the language in article 752a that says that surplus from bonds may be used for any lawful permanent improvement might be read to allow a county to spend such surplus for any permanent improvement for which a county could lawfully spend money. However, that language must be read in context. Article 752a provides that bonds issued thereunder "shall be issued . . . as contemplated and

authorized by section 52, article 3, of the Constitution of this State." That constitutional provision authorizes the legislature to authorize counties to issue bonds for the following purposes only:

> (1) The improvement of rivers, creeks, and streams to prevent overflows, and to permit of navigation thereof, or irrigation thereof, or in aid of such purposes.

> (2) The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof.

> (3) The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof.

Because article 752a is based on article III, section 52, of the constitution, we think that the type of permanent improvements for which surplus from bonds may be spent is limited to the purposes for which article III, section 52, allows counties to issue bonds. See State ex rel Childress v. School Trustees of Shelby County, 239 S.W.2d 777, 781 (Tex. 1951) (all sections of a bill should be read so as to present a harmonious whole). Also, we think that a narrow reading of article 752a makes sense in light of the well-established rule that proceeds of bonds must be spent for purposes for which they were voted. Lewis v. City of Fort Worth, 89 S.W.2d 975, 978 (Tex. 1936). As a practical matter, there may often be some surplus after bond proceeds have been spent for the purposes for which the bonds were issued and the bonds have been retired. See Madeley v. Trustees of Conroe Independent School District, 130 S.W.2d 929, 934 (Tex. Civ. App. - Beaumont 1939, writ dism'd judgmt cor.). But we do not think that article 752a should be read so broadly that it would potentially permit political subdivisions to attempt to circumvent the expressed will of the voters in order to maintain a surplus for use on projects on which the voters have not voted.

In regard to the use of bond proceeds we also note that when an election order or pledge does not specify projects for which bond proceeds are to be used, the governing body of the entity issuing the bonds is left free to exercise its discretion in expending the funds. Hudson v. San Antonio Independent School District, 95 S.W.2d 673, 674 (Tex. 1936). In such cases, however, the governing body must not act unreasonably or arbitrarily. Lewis v. City of Fort Worth, 89 S.W.2d 975, 978 (Tex. 1936). Also, when voters have relied on orders pledging that bond proceeds will be used on certain projects, the governing body of the entity issuing the bonds may not arbitrarily ignore or repudiate those pledges. Hudson v. San Antonio Independent

School District, 95 S.W.2d 673 (Tex. 1936). We express no opinion about the nature of the election handout you provided to us, but we call your attention to the following language in a 1982 Court of Appeals case:

> Although it is the general rule, relied upon by appellees, that a contract or agreement made by a public agency like appellee School District is valid and binding only when adopted by a resolution or order at a meeting of the governing body and entered in its minutes, we have found no authority expressly holding that a statement to the .voters designating a particular site to be purchased with the proceeds of a bond issue, made by a governing body with the power of site selection, under the circumstances and for the deliberate purpose and the effect alleged here by appellant, must be adopted at a meeting entered in the minutes of the governing body before it can officially become and be relied upon by the voters as part of the proposition submitted in the bond proposal.

Devorsky v. La Vega Independent School District, 635 S.W.2d 904, 909 (Tex. App. - Waco 1982, no writ); See also Inverness Forest Improvement District v. Hardy Street Investors, 541 S.W.2d 454, 460 (Tex. Civ. App. - Houston [1st Dist.] 1976, writ ref'd n.r.e.) (letter by directors of improvement district represented and pledged to voters that bond proceeds would be used for certain projects even though letter was not official action of the board). But see Garcia v. Duval County, 354 S.W.2d 237, 240 (Tex. Civ. App. - San Antonio 1962, writ ref'd n.r.e.).

Your second question is whether Anderson County can spend approximately $800,000 that was set aside from its general fund and its road and bridge fund for payment of worker's compensation claims. You explain that from 1972 through 1984 Anderson County chose to be self-insured for purposes of worker's compensation. In 1972 the statute governing worker's compensation for county employees was codified as article 8309c, V.T.C.S. Section 16 of article 8309c provided as follows:

> Sec. 16. The county is hereby authorized to set aside from available appropriations, other than itemized salary appropriations, an amount not to exceed five per cent (5%) of the annual employee payroll of the county for the payment of all costs, administrative expenses, charges, benefits, insurance and awards authorized by this Act.

> The amount so set aside shall be set up in a separate account in the records of the county, which account shall show the disbursements authorized by this Act; provided the amount so set aside shall not exceed five per cent (5%) of the annual employee payroll at any one time. A statement of the amount set aside for the disbursements from said account shall be included in an annual report made to the County Treasurer and the Commissioners Court.

Article 8309c was repealed in 1973. Acts 1973, 63rd Leg., ch. 88, at 200. It was replaced by article 8309h, which contains essentially the same provision:

> (a) The political subdivision is hereby authorized to set aside from available appropriations, other than itemized salary appropriations, an amount sufficient for the payment of all costs, administrative expenses, charges, benefits, insurance, attorney fees, and awards authorized by this article.

> (b) The amount so set aside shall be set up in a separate account in the records of the political subdivision, which account shall show the disbursements authorized by this article. A statement of the amount set aside for the disbursements from the account shall be included in an annual report made to the political subdivision treasurer and the duly and legally constituted governing body of the political subdivision.

V.T.C.S. art. 8309h, §7.

As background to your question, we note that all county expenditures lawfully authorized to be made by a county must be paid out of a county's general fund unless there is some law that makes such expenditures a charge against a special fund. Bexar County v. Mann, 157 S.W.2d 134 (Tex. 1941). Therefore, expenditures made out of the money set aside pursuant to article 8309c or 8309h should have come from the county's general fund. However, a county may consolidate its four constitutional funds or it may transfer money into its general fund from its road and bridge fund. See Attorney General Opinion MW-516 (1982) (discussion of county funds and article VIII, section 9, of the Texas Constitution). Consequently, it was not improper for Anderson County to set aside money from its road and bridge fund for worker's compensation purposes.

You explain that since 1984 Anderson County has not been self-insured but has paid premiums to the Texas Association of Counties. Over $800,000 remains in the account set aside pursuant to articles 8309c and 8309h. You explain that the county auditor has suggested that a certain amount be set aside for expenses that might arise in connection with claims that arose before 1984. You ask whether Anderson County may spend the remaining money on the construction of a jail. We conclude that Anderson County may do so. The money in question was merely "set aside" in a special account to be used for worker's compensation costs, if needed. There was no requirement that all the money set aside actually be spent on worker's compensation, nor any guarantee that the money set aside would be sufficient to meet the county's worker's compensation costs. The statutes merely <u>allowed</u> the county to set aside a reserve for potential costs. Once the purpose for the special account no longer exists, we see no impediment to returning the unused money to the county's general fund. Therefore, Anderson County may spend that money for any proper county purpose. <u>See</u> V.T.C.S. art. 2351(7) (counties have authority to build jails).

## S U M M A R Y

Anderson County may not spend surplus from an issuance of road bonds on the construction of a new jail. Anderson County may spend on the construction of a new jail money set aside for worker's compensation purposes but no longer needed for such purposes.

Very truly yours

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General