

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

November 10, 1992

Mr. Kenneth H. Ashworth
Commissioner
Texas Higher Education
  Coordinating Board
P. O. Box 12788
Austin, Texas 78711

Opinion No. DM-178

Re: Whether a junior college may borrow money to rehabilitate a historic building under section 20.45 of the Education Code   (RQ-79)

Dear Commissioner Ashworth:

You ask whether St. Philip's College, a branch of the Alamo Community College District, has authority under section 20.45 of the Education Code to borrow money to rehabilitate historic buildings. This provision states as follows:

> The board of trustees of any school district of Texas is hereby authorized to pledge its delinquent school taxes levied for local maintenance purposes for specific school years as security for a loan, and such delinquent taxes pledged shall be applied against the principal and interest of the loan as they are collected. Provided, there shall be no pledging of delinquent taxes levied for school bonds for purposes herein set out. Funds secured through such loans may be employed for any legal maintenance expenditure or purpose of the school district. Provided further, that such loans may bear interest at a rate not to exceed the maximum rate provided by ... [section 2(a) of article 717k-2, V.T.C.S.].

Educ. Code § 20.45.[1]

---

[1]There is no judicial decision addressing the constitutionality of section 20.45 of the Education Code, but the court in *Allen v. Channelview Indep. Sch. Dist.*, 347 S.W.2d 27 (Tex. Civ. App.--Waco 1961, writ ref'd) addressed a similar statute, formerly V.T.C.S. article 2786e, now section 20.43 of the Education Code. Section 20.43 authorizes school districts to issue time warrants for specified purposes, payable out of any funds available at maturity, and "in effect, pledges delinquent taxes (except bond taxes), penalties and interest to payment of outstanding warrants." 347 S.W.2d at 28. The Texas Constitution places limits on deficit financing by cities and counties, *see* Tex. Const. art. XI, §§ 5, 7, but does not place similar limits on school districts. 347 S.W.2d at 29 n.1. The *Allen* court found that former article 2786e, did not violate article VII, section 3 of the Texas Constitution, the constitutional provision relating to school financing.

Your specific question is as follows:

> Does Tex. Educ. Code §20.45 apply to St. Philip's College, permitting it to pledge delinquent school taxes levied for local maintenance purposes as security for a loan, the proceeds of which will be used to rehabilitate historic buildings on the college campus?

We assume for purposes of this opinion that rehabilitating the buildings will serve the educational purposes of the junior college district. *See Texas Antiquities Committee v. Dallas County Community College Dist.*, 554 S.W.2d 924, 930-31 (Tex. 1977).

We first must decide whether the board of trustees of a junior college district may borrow money under the authority of section 20.45 of the Education Code. Section 20.45 expressly applies only to the "board of trustees of *any school district of Texas*," and does not refer to the board of trustees of a community college district. Educ. Code § 20.45 (emphasis added). However, section 130.084 of the Education Code provides as follows:

> The board of trustees of junior college districts shall be governed in the establishment, management and control of the junior college by the general law governing the establishment, management and control of independent school districts insofar as the general law is applicable.

We must ascertain whether section 20.45 of the Education Code is a law "governing the establishment, management and control of independent school districts." In *San Antonio Union Junior College Dist. v. Daniel*, 206 S.W.2d 995 (Tex. 1947), the Texas Supreme Court considered whether section 5 of former article 2815h, V.T.C.S., the predecessor of section 130.084, authorized a junior college district to issue refunding bonds under a statute applicable to independent school districts. Junior college districts had express authority to issue bonds, but the statute was silent as to refunding bonds. The court concluded that V.T.C.S. article 2815h, section 5 did not confer upon junior college districts the independent school districts' statutory authority to refund bonds. The provision, which consisted of the same wording as section 130.084 of the Education Code, was described as follows:

> [T]he language is clearly limited to the authority of the trustees to direct the *college* and . . . it has no reference to their authority with respect to the *district*, which alone can issue bonds.

206. S.W.2d at 998 (emphasis in original).

The above description of the predecessor of section 130.084 is difficult to apply to other questions under that provision, because the board of trustees' authority with respect to the district often cannot be distinguished from its authority with respect to the colleges of the district. For example, ad valorem taxes are levied by the governing board of a junior college district for the purpose of maintaining the colleges. Educ. Code § 130.122(a). However, other reasoning in the *San Antonio Union Junior College District*, opinion illuminates its remarks about the predecessor of section 130.084. The court cited both the long-standing opinion of the attorney general that junior college districts had no power to issue refunding bonds and the legislature's practice of expressly granting political subdivisions authority to issue refunding bonds. 206 S.W.2d at 998-1000. Since the power to issue refunding bonds had to be expressly conferred by statute on a governing body, that power could not be conferred on a junior college district by section 130.084, which does not expressly refer to refunding bonds.

The *San Antonio Union Junior College District* opinion indicates that there are limits to the school district powers that section 130.084 confers on junior college districts, but these appear to be narrow limits. Moreover, in *Shepherd v. San Jacinto Junior College Dist.*, 363 S.W.2d 742 (Tex. 1962), the supreme court decided that junior college districts are "school districts" within the constitutional authorization for ad valorem taxation found in article VII, section 3 of the Texas Constitution. By finding that junior college districts are school districts for purposes of the constitutional provision on ad valorem taxation, the *Shepherd* case supports the conclusion that provisions on ad valorem taxation relating to independent school districts may apply to junior colleges through section 130.084 of the Education Code.

Although we have found no judicial decisions on section 130.084 subsequent to *San Antonio Union Junior College District*, several attorney general opinions have addressed this provision. This office has found that section 130.084 confers upon the governing board of a junior college district the authority of a school district to spend local maintenance funds pursuant to section 20.48 of the Education Code, Attorney General Opinion WW-892 (1960), and to exercise the right of eminent domain under section 23.31 of the Education Code, Attorney General Opinion M-700 (1970). Attorney General Opinion M-878 (1971) determined that section 20.43 of the Education Code, authorizing school districts to issue time warrants to repair, renovate, and equip school buildings, applied to a junior college district under a predecessor of section 130.084. Accordingly, we conclude that the board of trustees of the Alamo Community College District may borrow money secured by

delinquent maintenance tax revenues pursuant to section 20.45 of the Education Code.

We finally consider whether the purposes for which a loan secured under section 20.45 may be used include the rehabilitation of a historic building. Section 20.45 allows the district to pledge taxes levied for local maintenance purposes and to use funds secured through the pledge "for any legal maintenance expenditure or purpose of the district." This language appears to restrict the loan funds to expenditures for maintenance purposes, but you argue that section 20.45 should be read to say that funds secured thereunder may be used "for any legal maintenance expenditure or [legal] purpose of the district." According to your construction, funds secured under section 20.45 may be used for any legal purpose of the junior college district, and are not subject to the statutory limits applicable to revenue collected for maintenance purposes.

Pursuant to constitutional authorization, the legislature may authorize school districts to levy and collect an ad valorem tax "for the further maintenance of public free schools, and for the erection and equipment of school buildings...." Tex. Const. art VII, § 3; see Shepherd, 363 S.W.2d 742. Although the constitution appears to refer to a single tax to be voted for maintenance and school building purposes, the legislature has traditionally treated taxes for maintenance and taxes for school building purposes as separate taxes, each requiring separate voter approval, and each to be used only for the purpose for which it was collected. Educ. Code §§ 20.02, 20.04, 130.122; Madeley v. Trustees of Conroe Indep. Sch. Dist., 130 S.W.2d 929 (Tex. Civ. App.--Beaumont 1939, writ dism'd, judgm't cor.); Attorney General Opinion H-339 (1974); 2 G. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 518 (1977). In Madeley, 130 S.W.2d 929 the court construed two statutes that respectively authorized school districts to levy and collect taxes and described the purposes for which the taxes could be spent.[2] The court stated as follows:

> The trustees of an independent school district by these two
> articles are given the power (a) to levy and collect a local tax for
> the maintenance of the district public free schools, and (b) to
> levy and collect a tax "for the purchase, *construction, repair or*

---

[2] The provisions construed by the Madeley court were former V.T.C.S. article 2827, section 2 and V.T.C.S. article 2784 (1925). These provisions are now codified as sections 20.01, 20.02, 20.04, and 20.48 of the Education Code.

> *equipment of public free school buildings* within the limits of such
> district."

130 S.W.2d at 933 (emphasis added).

*Madeley* concluded that the term "maintenance" of schools did not include the construction of school houses.[3] *Madeley*, 130 S.W.2d at 933; *see also Love v. Rockwall Indep. Sch. Dist.*, 194 S.W. 659 (Tex. Civ. App.--Dallas 1917, writ ref'd). "'[M]aintenance' means current operating expenses and does not include capital expenditures." G. BRADEN, *id.* (citing *Madeley*, 130 S.W.2d at 929 and *Love*, 194 S.W. 659); *see Stanford v. State Dep't. of Highways & Pub. Transp.*, 635 S.W.2d 581 (Tex. App.--Dallas 1982, writ ref'd n.r.e.) (maintenance of highways as that which is required to preserve highway as originally constructed); *People ex rel. Rogers v. Chicago*, 107 N.E. 222 (Ill. 1914) ("maintenance" may include ordinary repairs).

On reading article 20.45 as a whole, including its emergency clause, we conclude that a loan secured under its provisions may be used only for maintenance purposes of the district. *See* Gov't Code § 311.023(7) (a court may consider the emergency clause of a statute as an aid to ascertaining legislative intent). Article 20.45 of the Education Code was adopted with the following emergency clause:

> The fact that there are school districts with outstanding
> delinquent taxes sufficient *to impair the operation of their current
> school program* and that some of these districts will be forced to
> close after seven or eight months of school unless their boards of
> trustees can pledge delinquent taxes for loans to permit the
> completion of a nine months school term, creates an
> emergency . . . .

Acts 1953, 53d Leg., ch. 132, § 2, at 446 (emphasis added).

The emergency clause indicates that the legislature wished to provide a funding source for the day-to-day operation of schools and not for long-term capital projects such as constructing or rehabilitating buildings. Moreover, since the problem addressed by the legislature in article 20.45 resulted from outstanding delinquent taxes "levied for local maintenance purposes," it reasonably follows that

---

[3]There have been Education Code provisions defining "maintenance expenditure" broadly. *See* Educ. Code §§ 20.46, 20.47 (certain school districts authorized to levy additional maintenance tax after approval by voters to pay cost of purchase, construction, repair, renovation or equipment of school buildings) (repealed Acts 1991, 72d Leg., ch. 20, § 26).

the legislature would require loan funds secured under the statute to be used for the same purpose as the missing taxes. We conclude that the proceeds of a loan secured under article 20.45 of the Education Code may be used only for maintenance purposes of a school district.

We have no information about the extent of the repairs necessary to rehabilitate the historic buildings on the campus of St. Philip's College; however, your brief suggests that funds subject to the traditional limits on maintenance funds could not be used for the proposed project. If the implication of your brief is correct, then the proceeds of a loan secured under article 20.45 of the Education Code may not be used to rehabilitate historic buildings on the campus of St. Philip's College.

## SUMMARY

The governing body of a junior college has the authority of an independent school district under section 20.45 of the Education Code to pledge its delinquent local maintenance taxes as security for a loan. Loan proceeds secured under section 20.45 may be used only for maintenance purposes of a school district or junior college district. Accordingly, the Alamo Community College District may use funds secured through a loan under section 20.45 of the Education Code only for maintenance purposes of the junior college district.

Very truly yours,

DAN MORALES
Attorney General of Texas

p. 936

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General