May 20, 2010

The Honorable Rob Eissler
Chair, Committee on Public Education
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0775

Re: Authority of a school district to set property tax rates under section 26.08, Tax Code (RQ-0839-GA)

Dear Representative Eissler:

Section 26.08 of the Tax Code prohibits a school district ("district") from adopting a property tax rate (the "adopted rate") that exceeds the district's rollback tax rate (the "rollback rate") unless the adopted rate is approved by the district's registered voters at an election held for that purpose, except in the event of certain disasters. TEX. TAX CODE ANN. § 26.08(a) (Vernon Supp. 2009). Thus, the rollback rate, which is a rate calculated in accordance with the statute consisting of a maintenance and operation ("M&O") tax rate component and a debt tax rate component, is the maximum tax rate that a district may adopt without an election (the "rollback election"). *See id.* § 26.08(a), (n)(2). You ask five questions about a district's authority under section 26.08 to set tax rates.[1]

## 1. Authority to Increase Adopted M&O Tax Rate Above Rollback M&O Tax Rate Component

We begin by addressing your question regarding a district's authority to adopt an M&O tax rate above the district's maximum M&O rate calculated for the purposes of the rollback rate because it raises the fundamental issues of the "nature of the tax rate that serves as a trigger for" the rollback election and its relation to the M&O and debt tax rate components of the rollback rate calculation. Request Letter at 1–2; *see* MISD Letter at 1–2. To provide a context for discussion of section 26.08 and your question, we review the authority for and restriction on the two different components of a district's total property tax rate.

---

[1]*See* Request Letter at 1–2 (*available at* http://www.texasattorneygeneral.gov); *see also* Letter from Todd Stephens, Ph.D., Superintendent, Magnolia Independent School District, at 1–2 (Oct. 13, 2009) (attached to and referenced in the Request Letter) [hereinafter MISD Letter].

## A. School District Taxes

Pursuant to its constitutional authority,[2] the Legislature has authorized districts to levy and collect two discrete taxes: (i) an annual ad valorem tax to pay debt service on bonds issued for the acquisition, construction, or equipment of school buildings and other related purposes; and (ii) an annual ad valorem tax for the maintenance of public schools. TEX. EDUC. CODE ANN. §§ 45.001(a)(2) (Vernon Supp. 2009), 45.002 (Vernon 2006). Before it can be levied, each tax must be separately approved by the voters of the district in an election held for that purpose. *Id.* § 45.003(a) (Vernon Supp. 2009). Additionally, the proceeds of each tax may be used only for the purposes authorized. *See id.* §§ 45.001(a) (Vernon Supp. 2009), 45.002 (Vernon 2006), 45.003(b), (d) (Vernon Supp. 2009); *see also id.* § 44.004(c)(5)(A)(ii) (Vernon Supp. 2009) (describing the M&O and the "Interest & Sinking Fund" tax rate calculations for giving notice of the district budget and proposed tax rates); *Madeley v. Trs. of Conroe Indep. Sch. Dist.*, 130 S.W.2d 929, 932–34 (Tex. Civ. App.—Beaumont 1939, writ dism'd, judgm't cor.) (construing the then similar statutory authority for the M&O and bond taxes and discussing the purposes for which the respective tax proceeds may be used).

Proceeds of the bond tax may be used to pay the principal and interest—the debt service—on outstanding bonds. TEX. EDUC. CODE ANN. §§ 45.001(a)(2), .003(b) (Vernon Supp. 2009); *see also Madeley*, 130 S.W.2d at 933 (construing former statutory provisions to permit use of bond tax proceeds only to retire bonds issued for school buildings, to the extent needed for that purpose); *cf.* 2 GEORGE D. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 518 (1977) ("'[M]aintenance' means current operating expenses and does not include capital expenditures." (citing *Madeley*, 130 S.W.2d 929)). A district may levy the bond tax at a rate sufficient to pay the bond debt service. *See* TEX. EDUC. CODE ANN. §§ 45.001(a)(2), .003(b) (Vernon Supp. 2009).[3]

Proceeds of the M&O tax may be used to fund, generally speaking, only a district's current administrative and operating expenses. *Id.* §§ 45.002 (Vernon 2006), 45.003(d) (Vernon Supp. 2009); *see also Madeley*, 130 S.W.2d at 933 (construing former statutory provisions to permit M&O tax proceeds to be used only for maintenance purposes—which does not include the cost of constructing buildings—to the extent needed for those purposes); 2 GEORGE D. BRADEN, *supra*, at 518 ("'[M]aintenance' means current operating expenses and does not include capital expenditures." (citing *Madeley*, 130 S.W.2d 929)). The Legislature has capped the M&O annual tax rate districts may levy. In 2005, the cap was generally $1.50 for $100 of property valuation. *See Neeley v. W.*

---

[2] Article VII, section 3 of the Texas Constitution permits the Legislature to authorize districts to levy and collect "an . . . ad valorem tax . . . for the further maintenance of public free schools, and for the erection and equipment of school buildings therein; provided that a majority of the qualified voters of the district voting at an election to be held for that purpose, shall approve the tax." TEX. CONST. art. VII, § 3(e).

[3] *See also* TEX. EDUC. CODE ANN. § 45.0031(a) (Vernon 2006) (requiring a district to demonstrate to the attorney general a projected ability to pay with a tax rate not to exceed $0.50 per $100 of valuation any proposed tax-supported bonds in addition to, with a limited exception, all previously issued bonds).

*Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 758 (Tex. 2005) ("Tax rates set yearly are capped at $1.50/$100 valuation for M & O (except for seven districts in Harris County [authorized to tax at a maximum rate of $2.00/$100 valuation]), as they have been for sixty years . . . .") (footnotes omitted). With the 2006 changes to the school finance system, the Legislature introduced a compression percentage, tied to the 2005 benchmark tax levels, to lower the M&O cap and created a $0.17 "enrichment" tier above the compressed rate.[4]

Generally, a district may not adopt an annual M&O tax rate that exceeds "the rate equal to the sum of $0.17 and the product of the state compression percentage . . . multiplied by $1.50." TEX. EDUC. CODE ANN. § 45.003(d) (Vernon Supp. 2009); *see also id.* § 45.003(f) (providing for districts that levied M&O tax in 2005 at a rate greater than $1.50). The state compression percentage is "the percentage, as determined[5] by the commissioner [of Education], of a school district's adopted [M&O] tax rate for the 2005 tax year that serves as the basis for state funding for tax rate reduction[.]" *Id.* § 42.2516(a) (footnote added). The current state compression percentage is 66.67 percent, and thus the "M&O rate limit for most school districts is $1.17."[6]

## B.    Tax Code Subsections 26.08(a), (n)

Your question relates to Tax Code subsections 26.08 (a) and (n), which provide in pertinent part that:

(a) If the governing body of a school district adopts a tax rate that exceeds the district's rollback tax rate, the registered voters of the district at an election held for that purpose must determine whether to approve the adopted tax rate. . . .

---

[4]*See* Act of May 10, 2006, 79th Leg., 3d C.S., ch. 5, art. 1, § 1.12, 2006 Tex. Gen. Laws 45, 52 (amending Texas Education Code subsections 45.003(d), (e), and (f)) [hereinafter H.B. 1]. House Bill 1 set the state fund level that a district may receive from the Foundation School Program, the Tier 2 guaranteed yield level, based on a district's M&O tax effort up to and above the compressed rate as follows: (1) an equalized yield for each cent above $0.86 and up to the district's compressed rate (i.e., $1.00); and (2) an enrichment yield for (i) the first six cents above the compressed rate, i.e., the "golden pennies," and (ii) for each cent above the six cents up to the $0.17 cap on the M&O taxes, i.e., the "copper pennies." ENROLLED BILL SUMMARY, Tex. H.B. 1, 79th Leg., 3d C.S., at 1 (2006) (*available at* http://www.capitol.state.tx.us/BillLookup/BillSummary.aspx?LegSess=793&Bill=HB1) (last visited May 17, 2010) [hereinafter ENROLLED BILL SUMMARY]; TEXAS LEGISLATIVE BUDGET BD., FOUNDATION SCHOOL PROGRAM, FISCAL & POLICY STUDIES, at 2, 19–20 (March 2009) (*available at* http://www.lbb.state.tx.us/Public_Education/FoundationSchool_FiscalPolicy_0309.pdf) (last visited May 17, 2010) [hereinafter LBB STUDY].

[5]The state compression percentage is determined "based on the percentage by which a district is able to reduce the district's [M&O] tax rate for that year, as compared to the district's adopted [M&O] tax rate for the 2005 tax year, as a result of state funds appropriated for distribution . . . for school district property tax relief." TEX. EDUC. CODE ANN. § 42.2516(a) (Vernon Supp. 2009).

[6]SUSAN COMBS, TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, TRUTH-IN-TAXATION: A GUIDE FOR SETTING SCHOOL DISTRICT TAX RATES, at 7 (July 2009) (*available at* http://window.state.tx.us/taxinfo/proptax/tnt09schools) (last visited May 17, 2010) [hereinafter COMPTROLLER GUIDE]; *see also* TEX. TAX CODE ANN. § 5.05(a) (Vernon 2008) (authorizing the Comptroller of Public Accounts to issue publications for the appraisal and administration of the property tax).

. . .

(n) For purposes of this section, the rollback tax rate of a school district whose maintenance and operations tax rate for the 2005 tax year was $1.50 or less per $100 of taxable value is:

. . .

(2) for the 2007 and subsequent tax years, the lesser of the following:

(A) the sum of the following:

(i) the rate per $100 of taxable value that is equal to the product of the state compression percentage, as determined under Section 42.2516, Education Code, for the current year and $1.50;

(ii) the rate of $0.04 per $100 of taxable value;

(iii) the rate that is equal to the sum of the differences for the 2006 and each subsequent tax year between the adopted tax rate of the district for that year if the rate was approved at an election under this section and the rollback tax rate of the district for that year; and

(iv) the district's current debt rate; or

(B) the sum of the following:

(i) the effective maintenance and operations tax rate of the district as computed under Subsection (i) or (k), as applicable;

(ii) the rate per $100 of taxable value that is equal to the product of the state compression percentage, as determined under Section 42.2516, Education Code, for the current year and $0.06; and

(iii) the district's current debt rate.

TEX. TAX CODE ANN. § 26.08(a), (n)(2) (Vernon Supp. 2009); *see also id.* § 26.08(o) (providing that for school districts with a 2005 M&O tax rate greater than $1.50, the rollback rate is to be computed in a similar manner, substituting the greater rate for $1.50).

## C.   Discussion

You note that the rollback rate calculation under subsection 26.08(n) "involves a sum of [M&O] taxes . . . plus an additional $0.04, plus any increment of taxation previously approved at an

election, plus the district's 'current debt rate' for bonds[,]" but the subsection 26.08(a) requirement to hold an election "applies to the 'district's rollback tax rate', which appears to be the sum of the different [M&O] tax rates plus any tax for payment of bonds." Request Letter at 1. You add that "Legislators have understood that the general reference to a total tax rate in subsection (a) does not override the more specific components of the rollback rate calculated in subsection (n)." *Id.* at 1–2. Thus, you ask: "May a district, having computed a rollback limit as a sum of those different rates under subsection (n), set different maintenance and debt rates from that calculation without an election, so long as the total tax rate does not exceed the rollback limit?" *Id.* at 2. Specifically, the issue presented is whether a district may increase the adopted M&O tax rate above the maximum M&O tax rate calculated for the purposes of determining the rollback rate, without triggering a rollback election.[7]

Standing alone, Tax Code subsection 26.08(a) could be read to require an election only for a tax rate that exceeds the rollback rate. TEX. TAX CODE ANN. § 26.08(a) (Vernon Supp. 2009). As you note, subsection (a) expressly references only the combined adopted tax rate and compares it against the combined rate calculated under subsection 26.08(n) for the purposes of the rollback election. *See id.* § 26.08(a) ("If . . . a school district adopts a tax rate that exceeds the district's *rollback tax rate*, the registered voters . . . must determine whether to approve the adopted tax rate.") (emphasis added). Thus, it could be argued that so long as the adopted rate does not exceed the rollback rate, an election is not required under subsection (a) no matter the value of the respective M&O and debt tax rate components of the adopted tax rate. The proposed construction, however, considers subsection 26.08(a) in isolation and disregards the detailed provisions for calculating the rollback rate in subsection (n), the meaning and operation of the calculation, and the Legislature's intent manifested therein regarding district taxes.

Instead, consistent with the established principles of statutory construction, we must construe subsections 26.08(a) and 26.08(n) together to determine the Legislature's intent because "[o]ur objective in construing a statute is to determine and give effect to the Legislature's intent." *Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 517 (Tex. 2007). When "determining legislative intent, we must look to the entire statute, not just to any one phrase, clause, or sentence of that statute." *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978). We cannot give a single provision "a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such a construction if standing alone." *Id.*; *see also Bridgestone/Firestone, Inc. v. Glyn-Jones*, 878 S.W.2d 132, 133 (Tex. 1994) ("Words in a vacuum mean nothing. Only in the context of the remainder of the statute can the true meaning of a single provision be made clear."). "We must presume that the Legislature intends an entire statute to be effective and that a just and reasonable result is intended." *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001).

---

[7]The MISD Letter, raising the first two questions, asks "whether a District may set a tax rate, without a [rollback election], which would include an M&O rate above $1.04 [the maximum M&O rate under the rollback calculation for most districts], with an overall tax rate not exceeding the calculated rollback rate for that year." MISD Letter at 2. The letter explains that "[c]urrently, the accepted interpretation of Truth in Taxation involving Tax Ratification Elections requires that Districts hold [a rollback election] in order to set an M&O rate anywhere above the $1.04 rate up to $1.17[,]" but that "[t]his interpretation seems to disregard the . . . procedures described in Truth in Taxation which uses the combined M&O and I&S rollback rate calculation to determine whether an election must take place to ratify a tax rate above the rollback rate." *Id.* at 1.

First, the "rollback tax rate" as used in subsection 26.08(a) has the meaning ascribed to that term by the Legislature in subsection 26.08(n). *See* TEX. TAX CODE ANN. § 26.08(n) (Vernon Supp. 2009); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008) ("[W]e use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired."). Subsection (n) expressly states that "[f]or purposes of this section, the rollback rate of a school district . . . is" the sum of the two separately calculated debt and M&O tax rate components—reflecting the two separately authorized taxes that districts may levy for different purposes. TEX. TAX CODE ANN. § 26.08(n) (Vernon Supp. 2009); *see* TEX. EDUC. CODE ANN. §§ 45.001(a)(2) (Vernon Supp. 2009) (authorizing bond tax), 45.002 (Vernon 2006) (authorizing M&O tax); *Madeley*, 130 S.W.2d at 932–34 (discussing authority and purposes of the bond and M&O taxes). The M&O component of the rollback calculation is the *lesser* of (A) the sum of a district's compressed M&O rate ($1.50 or higher voter-authorized M&O tax rate), times the state compression percentage (currently 66.67 percent), plus four cents and any additional cents authorized at prior rollback elections or (B) the sum of the "effective M&O rate"[8] and four cents (the product of the state compression percentage (66.67%) and six cents). *Id.* § 26.08(n)(2)(A)(i)–(iii), B(i)–(ii). The "current debt rate"[9] is added to this maximum M&O tax rate component to arrive at the rollback rate. *See id.* § 26.08(n)(2). Thus, subsection 26.08(a) incorporates not only the sum of the two separate tax components, but also the limits on those calculated components in the absence of a rollback election. Giving effect to subsection 26.08(n) and its separate tax rate calculations, as incorporated in subsection 26.08(a), necessarily means that the adopted rate *and* its M&O tax rate component cannot exceed the rollback rate *and* its maximum M&O tax rate component.

Second, an examination of the subsection 26.08(n) calculation indicates that while the rollback tax rate under the subsection is a sum of the two component tax rates, it is only an increase in the adopted M&O tax rate above the maximum rollback M&O tax rate component that will cause the total adopted tax rate to exceed the rollback rate. *See id.* The current debt rate is the actual rate necessary to raise tax revenues to pay debt service, taking into account other funds available for that

---

[8]The "effective M&O tax rate," for the purposes of calculating a district's adopted and rollback tax rates, is the rate that when applied to the current taxable value of property in the district would yield the same amount of local tax revenues and state funds per student in weighted average daily attendance as the preceding year if the state funding elements available in the current year had been in effect in the preceding year. *See* TEX. TAX CODE ANN. § 26.08(i), (n)(2)(B)(i) (Vernon Supp. 2009) (rollback calculation referencing and defining "effective [M&O] tax rate"); TEX. EDUC. CODE ANN. § 44.004(c)(5)(A)(ii)(a) (Vernon Supp. 2009) (providing for calculation of rate to maintain same level of M&O revenues for required public notice of district tax rates).

[9]A district's "current debt rate," for the purposes of calculating its adopted and rollback tax rates, is the rate required to raise taxes in an amount, when added to funds received from the state and excess district taxes from the previous year that are available for such purpose, that will be sufficient to pay a district's outstanding debt in the coming year. *See* TEX. TAX CODE ANN. § 26.012(4) (Vernon 2008) (providing formula for calculation of "current debt rate"); *id.* § 26.05(a)(1) (Vernon Supp. 2009) (providing for school district's debt service rate as the rate published under Education Code subsection 44.004(c)(5)(A)(ii)(b)); *id.* § 26.08(n)(2) (rollback rate calculation referencing "current debt rate"); TEX. EDUC. CODE ANN. § 44.004(c)(5)(A)(ii)(b) (Vernon Supp. 2009) (providing for calculation of "Interest & Sinking Fund" tax rate shown on the required public notice of district tax rates). In other words, the current debt rate is the actual rate necessary to raise tax revenues to pay debt service in the coming year, taking into account other funds available for that purpose, based on the current value of taxable property in the district. *See* COMPTROLLER GUIDE, *supra* note 6, at 14 ("Debt Component").

purpose.[10] *See supra* note 9; *see also* COMPTROLLER GUIDE, *supra* note 6, at 14 (explaining that "[t]he debt rate service portion [of the rollback rate] is the tax rate necessary to pay the [school district's] debt payments in the coming year" and "it considers what the [school district] will actually need for the current year"). There is no ceiling or limit on the debt rate for the purposes of the rollback rate calculation. *See* TEX. TAX CODE ANN. § 26.08(n)(2)(A)(iv), B(iii) (Vernon Supp. 2009). Any increases in the *adopted* debt service rate necessary to pay a school district's debt increases the "current debt rate" component of the rollback formula *and* the combined rollback tax rate. *See id.*; *see also* COMPTROLLER GUIDE, *supra* note 6, at 13–14 ("The portion of the overall rate used to retire debt may rise as high as necessary without triggering the threat of a rollback.").[11] Accordingly, under the rollback rate calculation, an increase in the debt rate component of a school district's combined adopted tax rate will not cause the adopted rate to exceed the rollback rate because the rollback rate increases correspondingly. This fact, by default, leaves increases in the adopted M&O tax rate as the potential trigger, under the rollback rate formula, for a rollback election.

The M&O tax rate component of the rollback rate is effectively the *lesser* of (1) a district's compressed M&O rate (plus additional cents, if any, authorized by district voters at prior rollback elections) plus four cents *or* (2) the district's effective M&O rate plus four cents. *See* TEX. TAX CODE ANN. § 26.08(n)(2)(A)(i)–(iii), B(i)–(ii) (Vernon Supp. 2009); *see also* COMPTROLLER GUIDE, *supra* note 6, at 13 ("The M&O portion of the rollback tax rate allows school districts to add four cents . . . to the lesser of the 2009 compressed operating tax or the effective M&O rate to generate operating funds. School districts will get to add to the compressed operating rate any additional cents approved by voters at a 2006 or subsequent rollback election."). Because a district must use the lesser rate, the rollback formula incorporates a ceiling on the M&O tax rate component. Under the rollback rate formula, an increase in a district's adopted M&O tax rate above this M&O rollback rate ceiling will, by definition, cause the district's combined adopted tax rate to exceed the rollback rate. *See id.* § 26.08(n)(2)(A)(i)–(iii), B(i)–(ii); *see also* LBB PRIMER, *supra* note 11, at 11 ("the rollback rate applies to maintenance and operations (M&O) tax effort"); LBB STUDY, *supra* note 4, at 20 ("A district does not require voter approval to levy the first $0.04 above the state maximum compressed rate of $1.00. Any access to pennies beyond those four does require a tax rate election.").[12] Thus, subsection 26.08(n) indicates that the Legislature intended increases in a

---

[10]A school district's authority to increase or decrease the debt rate from the rate necessary to pay debt service on outstanding obligations is limited. *See* TEX. TAX CODE ANN. § 26.05(f) (Vernon Supp. 2009) (stating that unless required by the enabling law, a governing body may not apply revenues generated from the debt rate for other than the retirement of debt); TEX. EDUC. CODE ANN. §§ 45.002 (Vernon 2006), 45.003(b) (Vernon Supp. 2009) (authorizing the levy and collection of taxes sufficient to pay principal of and interest on bonds as authorized by district voters).

[11]*Cf* TEXAS LEGISLATIVE BUDGET BOARD, FINANCING PUBLIC EDUCATION IN TEXAS, KINDERGARTEN THROUGH GRADE 12, LEGISLATIVE PRIMER, at 11 (3d ed. Oct. 2001) ("So as not to harm a district's ability to pay its debt service, the rollback rate applies to maintenance and operations (M&O) tax effort.") (*available at* http://www.lbb.state.tx.us/ Education/Public/Finance_PublicEd_3dEd_1001.pdf) (last visited May 17, 2010) [hereinafter LBB PRIMER].

[12]The Texas Education Agency, in answering a question as to whether a rollback election is necessary to gain access to the two additional "golden pennies," *see supra* note 4, explains that a school district must choose the lower of

(continued...)

district's adopted M&O tax rate above the maximum M&O tax rate component of the rollback tax rate to trigger the rollback election.

Accordingly, giving effect to both subsections 26.08(a) and 26.08(n), we determine that the Legislature intended a district to increase its adopted M&O tax rate above the maximum M&O tax rate component of the rollback tax rate only with approval of the district's registered voters.[13]

### D.    Conclusion

In sum, based on an examination of the language and operation of Tax Code subsections 26.08(a) and 26.08(n) as a whole, we determine that the Legislature intended an increase in the adopted M&O tax rate above the maximum M&O tax rate component of the rollback rate calculation to trigger a rollback election. Accordingly, in the absence of authority to the contrary, we conclude that a district may not increase the adopted M&O tax rate above the maximum M&O tax rate component calculated for the purposes of the rollback tax rate calculation without an election.[14]

### 2.    Authority to Adopt a Tax Rate Exceeding the Rollback Rate Two Years After a Disaster

We next address your question regarding the subsection 26.08(a) exception to the rollback election requirement: "Must a school district hold an election to approve a rate previously adopted under subsection (a)'s disaster exception in a year following a rate set pursuant to that exception?"

---

[12](...continued)
the effective M&O tax rate and $1.00 (the compressed M&O rate) and "may add only four cents to this lower rate without triggering a rollback election." 2008–09 TAX RATE FAQs, at 1; *see also* TEXAS EDUCATION AGENCY, FAQS, HOUSE BILL 1, at 14 (Aug. 24, 2006 - Updated) ("New revenue can be generated by accessing the $0.04 available in the rollback rate calculation. The $0.04 can be increased by a rollback election.") (documents on file with the Opinion Committee).

[13]This textual construction of section 26.08 is supported by legislative history. *See City of Rockwall*, 246 S.W.3d at 626 n.6 ("We may also consider legislative history in construing a statute that is not ambiguous.") (citing TEX. GOV'T CODE ANN. § 311.023(3))). The enrolled bill summary and bill analyses of H.B. 1 show that the Legislature intended increases to the M&O tax rate of more than four cents above the reduced levels to be subject to voter approval, both to address the constitutional problems identified in the *Neeley* decision and to provide property tax relief from the M&O tax. *See* ENROLLED BILL SUMMARY, *supra* note 4, at 1–2; HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. H.B. 1, 79th Leg., 3d C.S., at 1–4 (2006) (*available at* http://www.hro.house.state.tx.us/pdf/ba793/hb0001.pdf #navpanes=0) (last visited May 17, 2010); *see also* SENATE RESEARCH CENTER, BILL ANALYSIS, Tex. H.B. 1, 79th Leg., 3d C.S., at 1 (2006) ("[H.B. 1] corrects the constitutional violation by providing significant additional state revenue to fund the public school system and enable school districts to exercise meaningful discretion in setting local property tax rates.") (*available at* http://www.capitol.state.tx.us/tlodocs/793/analysis/pdf/ HB00001S.pdf) (last visited May 17, 2010). With respect to Tax Code section 26.08, the enrolled bill summary of H.B. 1 explains: "The bill amends the provisions of the Tax Code governing the calculation of school district rollback rates so as to make any increase of more than four cents above a school district's compressed M&O tax rate for enrichment purposes subject to voter approval." ENROLLED BILL SUMMARY, *supra* note 4, at 1.

[14]We note that a district may, of course, adopt an M&O tax rate that is lower than the calculated maximum M&O tax rate component of the rollback rate.

Request Letter at 1.[15] Subsection (a) provides that "[w]hen increased expenditure of money by a school district is necessary to respond to a disaster, . . . *an election is not required* under this section to *approve the tax rate adopted by the governing body for the year following the year in which the disaster occurs.*" TEX. TAX CODE ANN. § 26.08(a) (Vernon Supp. 2009) (emphasis added). By its plain language, the subsection (a) exception to the general requirement for a rollback election is limited to the adopted tax rate in excess of the rollback rate for the year following the year in which the disaster occurred. *Id.; see Leland v. Brandal,* 257 S.W.3d 204, 206 (Tex. 2008) ("If the statute's language is unambiguous, its plain meaning will prevail."). An election is required to approve an adopted tax rate that exceeds the rollback rate in any year subsequent to the year following the year in which the disaster occurred. *See* TEX. TAX CODE ANN. § 26.08(a) (Vernon Supp. 2009); *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 681 (Tex. 1998) ("'It is a familiar rule of statutory construction that an exception makes plain the intent that the statute should apply in all cases not excepted.'" (quoting *State v. Richards,* 301 S.W.2d 597, 600 (Tex. 1957))).

Accordingly, a district must hold an election to approve a rate previously adopted under the disaster exception in order to adopt that rate in a year subsequent to the year following the year in which the disaster occurred if the rate exceeds the district's rollback rate for such subsequent year.

## 3.    Authority to Adopt a Tax Rate Lower Than the Voter-Approved Tax Rate

You also ask: "May a school district board of trustees adopt a rate lower than the rate authorized in a rollback election?" Request Letter at 2. To clarify the issue raised by your question, we note that a district may, of course, adopt a tax rate that is lower than the rollback tax rate without a rollback election. *See* TEX. TAX CODE ANN. § 26.08(a) (Vernon Supp. 2009). The issue raised by your question is a district's authority to adopt a rate lower than the district's adopted rate that, because it exceeded the rollback rate, was submitted to and approved by the district's voters at a rollback election. *See* Request Letter at 2. Subsection 26.08(b) directs a district to order an election if the district adopts a tax rate that exceeds the rollback rate and to submit a ballot that permits "voting for or against the proposition: 'Approving the ad valorem tax rate of $_____ per $100 valuation . . . for the current year, a rate that is $_____ higher per $100 valuation than the school district rollback tax rate.'" TEX. TAX CODE ANN. § 26.08(b) (Vernon Supp. 2009). Subsection 26.08(c) provides that "[i]f a majority of the votes cast in the election favor the proposition, the tax rate for the current year is the rate that was adopted by the governing body." *Id.* § 26.08(c).

Under subsections 26.08(b) and (c), the eligible voters in a district are asked to approve the adopted rate if it exceeds the rollback rate, i.e., a specific tax rate rather than a maximum rate. *Compare id.* § 26.08(b)–(c), *with* TEX. EDUC. CODE ANN. § 45.003(d) (Vernon Supp. 2009) (authorizing proposition for approval of M&O tax "at a rate *not to exceed* the rate stated in the proposition") (emphasis added) . If approved, the statute expressly provides that the specific tax rate becomes the district's tax rate for the current year. *See* TEX. TAX CODE ANN. § 26.08(c) (Vernon Supp. 2009); *see also* LBB STUDY, *supra* note 4, at 20 ("If a district receives approval for a particular tax rate beyond the first $0.04 above compression, it must levy that tax rate; for example,

---

[15]*See* MISD Letter at 1 (asking "whether a District's ability to not ratify its tax rate above $1.04 M&O rate under this disaster provision is limited to only the year following the disaster").

a district may not seek voter approval to levy the full $0.17 of enrichment tax effort and then keep taxing authority in reserve by levying something less than that rate."); COMPTROLLER GUIDE, *supra* note 6, at 21 ("If . . . votes cast in the election favor the adopted tax rate, then the adopted tax rate stands."). If the adopted rate is not approved, then the district "may not adopt a tax rate . . . that exceeds the . . . rollback tax rate." *See* TEX. TAX CODE ANN. § 26.08(d) (Vernon Supp. 2009); *see also* COMPTROLLER GUIDE, *supra* note 6, at 21 ("If the voters disapprove the adopted tax rate, the school district's rollback rate would be the adopted tax rate."); LBB PRIMER, *supra* note 11, at 11 ("If voters disapprove, the current tax rate takes effect."), 39 ("If a majority of the district's voters disapprove of the tax rate, it is 'rolled back' to the current tax rate."). Under subsections (b) and (c), after a favorable rollback election the authorized district rate is the adopted rate approved by the district voters in the election.

Accordingly, a district may not adopt a tax rate that is lower than the adopted rate (in excess of the rollback rate) approved by the district's eligible voters at the rollback election.

## 4.    Effect in Subsequent Years of Voter-Approved Increases Above Rollback Rate

Another question you ask concerns "the effect of a voter authorization to set a tax rate under Section 26.08 and the rollback tax rate for subsequent years" and asks: "If the voters of a school district approve a rollback election, is the district permanently entitled to the additional increment of taxing authority and, if so, is that entitlement constrained by the alternative calculation under [subsection 26.08](n)(2)(B)?" Request Letter at 2. Under Tax Code subsection 26.08(n)(2), a district must use the lesser of the two M&O tax rate amounts calculated for the purposes of the rollback rate calculation. *See* TEX. TAX CODE ANN. § 26.08(n)(2) (Vernon Supp. 2009); *see also* COMPTROLLER GUIDE, *supra* note 6, at 13 ("The M&O portion of the rollback tax rate allows school districts to add four cents . . . to the lesser of the 2009 compressed operating tax or the effective M&O rate to generate operating funds. School districts will get to add to the compressed operating rate any additional cents approved by voters at a 2006 or subsequent rollback election."). Under subdivision (A) of subsection 26.08(n)(2), a district is expressly authorized to add to the compressed M&O rate the increases (the additional cents), above the rollback rate, approved by district voters at elections held in 2006 and thereafter. TEX. TAX CODE ANN. § 26.08(n)(2)(A)(iii) (Vernon Supp. 2009); COMPTROLLER GUIDE, *supra* note 6, at 13. In the subdivision (A) calculation, because the voter-approved increases are specifically added to the compressed rate, they directly increase the M&O tax rate ceiling under subdivision (A) and the first part of the rollback tax rate calculation.

A district may adopt this increased tax rate (the compressed M&O rate plus the voter-approved increases under subdivision (A)) only if it is less than the effective M&O tax rate calculated under subdivision (B). The effective M&O rate is, in general terms, the rate that when applied to the current taxable value of district property would yield the same amount of local tax revenues and state funds per student in weighted average daily attendance as the preceding year if the state funding elements available in the current year had been in effect in the preceding year. *See supra* note 8. Under this formula, the tax revenues derived from the voter-approved rate increases in the preceding year are part of the revenues generated in the preceding year and are used to calculate the effective M&O tax rate for the current year. *See id.* Thus, the increases appear to be a part of the effective M&O rate calculation and potentially increase the M&O tax rate ceiling under subdivision (B). To that extent, the subdivision (B) calculation also recognizes the increases.

The effective M&O tax rate necessary to raise the same amount of local revenues and state revenues as the preceding year, however, is affected by other variables—such as increases and decreases in the number of students in a district and in the taxable value of property in a district. *See* TEX. TAX CODE ANN. § 26.08(i) (Vernon Supp. 2009); *id.* § 26.08(n)(2)(B)(i). For instance, an increase in the taxable value of property might lower the tax rate necessary to raise the same amount of tax revenues as those for the preceding year. Consequently, the effective M&O tax rate under subdivision (B) could be a lesser rate than the compressed rate plus the voter-approved additional cents under subdivision (A) even though the effective M&O rate calculation indirectly incorporates the voter-approved increases.

Accordingly, voter-approved increases to the M&O tax rate become part of the rollback rate calculation and potentially increase the rollback rate ceiling in subsequent years. However, a school district's authority to adopt a particular M&O tax rate in subsequent years will necessarily depend on a district's maximum M&O tax rate calculated for the purposes of the rollback rate for those subsequent years.

**5.     Authority to Calculate Rollback Rate Based on District-Generated Projection of Taxable Value**

Finally, you ask: "May a district calculate its rollback limit based on a district-generated projection of taxable value if the district has not received a certified taxable property appraisal roll?" Request Letter at 2. You explain that "[s]ome districts have found that the estimated appraisal roll declines substantially when a certified roll is received and would prefer to use a projected amount more in line with historical experience." *Id.*

**A.     Specific Provisions for School District's Rollback Rate Calculation**

Like other taxing units, a school district must calculate the components of the rollback rate using the taxable values certified by the chief appraiser. TEX. TAX CODE ANN. § 26.08(n)(2), (i) (Vernon Supp. 2009); TEX. EDUC. CODE ANN. § 44.004(c)(5)(A)(ii) (Vernon Supp. 2009); *see also* TEX. TAX CODE ANN. § 26.012(4), (6), (9) (Vernon 2008) (defining "current debt rate," "current total value" and "effective maintenance and operation rate"). Under Tax Code section 26.08 the rollback rate is—as previously described—based on a district's "current debt rate" and "effective M&O rate." TEX. TAX CODE ANN. § 26.08(n)(2) (Vernon Supp. 2009). Pursuant to Education Code section 44.004, both of these component rates are calculated using the "current taxable value for the district, as certified by the chief appraiser under Section 26.01 Tax Code, and as adjusted to reflect changes made by the chief appraiser as of the time the notice [of the budget and proposed tax rate] is prepared." TEX. EDUC. CODE ANN. § 44.004(c)(5)(A)(ii)(a) (Vernon Supp. 2009).

The Legislature has expressly provided for the calculation of the rollback rate and its component rates based on the *estimated* taxable value when a district has not received the certified roll or when a district elects to adopt a tax rate before it receives the certified appraisal roll. Under Education Code chapter 44, before adopting a tax rate, a school district must prepare a budget for the following fiscal year and give notice of the meeting to adopt the budget and the proposed tax rate. *See id.* §§ 44.002 (Vernon 2006), 44.004(a)–(c), (g) (Vernon Supp. 2009). Pursuant to section

44.004, the notice must include, among other information, a statement of the "rollback rate determined under Section 26.08, Tax Code." *Id.* § 44.004(c)(8). "[A] school district with a fiscal year beginning July 1[16] may use the certified estimate of the taxable value of district property required by section 26.01(e), Tax Code, in preparing the notice . . . if the district does not receive on or before June 7 the certified appraisal roll for the district required by Section 26.01(a), Tax Code." *Id.* § 44.004(h) (footnote added); *see* TEX. TAX CODE ANN. § 26.01(a) (Vernon Supp. 2009) (requiring chief appraiser to provide certified appraisal roll by July 25). Additionally, a district that elects to adopt a tax rate before the district receives the certified appraisal role may use the "certified estimate of taxable value in preparing" the additional meeting notice required in these circumstances. TEX. EDUC. CODE ANN. § 44.004(j) (Vernon Supp. 2009); *see also* TEX. TAX CODE ANN. § 26.05(g) (Vernon Supp. 2009) (providing the same power). Further, Tax Code section 26.05 expressly provides that if a district adopts a tax rate before the district receives the certified appraisal roll, "the effective tax rate and the rollback rate of the district shall be calculated based on the certified estimate of taxable value." TEX. TAX CODE ANN. § 26.05(g) (Vernon Supp. 2009).

## B.    School District Authority

School districts "possess only the powers expressly conferred on them by law or necessarily implied from the powers so conferred." *See Tex. Roofing Co. v. Whiteside*, 385 S.W.2d 699, 701 (Tex. Civ. App.—Amarillo 1965, writ ref'd n.r.e.) (citing *Harlingen Indep. Sch. Dist. v. Page*, 48 S.W.2d 983, 986 (Tex. Comm'n App. 1932, judgm't adopted)); *accord Fisher v. Burkburnett Indep. Sch. Dist.*, 419 F. Supp. 1200, 1202 n.2 (N.D. Tex. 1976). No provision that we find, or to which we are directed, expressly authorizes a district to generate or base its tax rate calculations on a district-generated projection of taxable value of property in the district. Additionally, we do not believe that the authority may be implied. First, the Legislature has specifically provided for the calculation of the rollback rate based on an appraisal district's estimate when a school district has not received the certified appraisal roll or elects to adopt a tax rate before it receives the certified appraisal roll. Second, it appears contrary to the general statutory scheme granting appraisal districts the exclusive authority to appraise property and determine its value for the purposes of ad valorem taxation, and requiring taxing units to use that value. *See* TEX. TAX CODE ANN. § 6.01(a)–(b) (Vernon 2008) (creating appraisal districts and requiring each district to appraise property for ad valorem tax purposes for each taxing unit within the appraisal district); *id.* § 6.05(a), (c) (requiring appraisal districts to establish appraisal offices and retain a chief appraiser to administer the office); *id.* § 26.01(a), (e) (Vernon Supp. 2009) (requiring the chief appraiser to prepare and submit, by July 25, to a taxing unit the certified appraisal roll listing the property taxable by that unit and, by April 30, an *estimate* of the taxable value of property in the unit).

Accordingly, we conclude that a district may not calculate its rollback rate based on a district-generated projection of taxable value of property in the district when it has not received the certified taxable value from the tax appraisal district.

---

[16]A district's fiscal year "begins on July 1 or September 1 of each year, as determined by the board of trustees of the district." TEX. EDUC. CODE ANN. § 44.0011 (Vernon 2006).

# S U M M A R Y

Tax Code subsection 26.08(a) prohibits a school district from adopting a tax rate (the "adopted rate") that exceeds the rollback tax rate (the "rollback rate") for the district unless the adopted rate is approved by the district's registered voters at an election held for that purpose (the "rollback election"), except in the event of certain disasters. The rollback rate is calculated in accordance with subsection 26.08(n) and has a maximum maintenance and operation ("M&O") tax rate component and a current debt rate component.

Based on an examination of the subsection 26.08(n) formula for calculating the rollback rate and its operation, the Legislature intended an increase in the adopted M&O tax rate above the maximum M&O tax rate component calculated for the purposes of the rollback rate calculation to be approved by the district's registered voters. Thus, subsections 26.08(a) and (n), considered together, do not authorize a school district to increase the adopted M&O tax rate above the maximum M&O tax rate component calculated for the purposes of the rollback rate without a rollback election.

Subsection 26.08(a) requires a school district to hold a rollback election to approve a rate previously adopted under the disaster exception in order to adopt that rate in a year subsequent to the year following the year in which the disaster occurred, if the rate exceeds the district's rollback rate for that subsequent year.

Subsections 26.08(b) and (c) require the voters in a school district to approve the district's adopted rate if it exceeds the rollback rate, i.e., a specific tax rate rather than a maximum rate. Accordingly, these subsections do not authorize a school district to adopt a tax rate that is lower than the adopted rate approved by the district's registered voters at a rollback election.

Under subsection 26.08(n), voter-approved increases to the M&O tax rate become part of the rollback rate calculation and potentially increase the M&O tax rate component of the rollback rate. However, a school district's authority to adopt a particular M&O tax rate in subsequent years will necessarily depend on a district's maximum M&O tax rate calculated for the purposes of the rollback rate for those subsequent years.

A school district is not expressly or impliedly authorized to calculate its rollback rate based on a district-generated projection of

taxable value of property in the district when the district has not received the certified appraisal roll from the appraisal district.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee